**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| PREMIUM PLASTICS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-10-3960 |
| | § | |
| SEATTLE SPECIALITY INSURANCE SERVICES, INC. and GREAT AMERICAN ASSURANCE COMPANY, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This insurance dispute arises from hurricane damage to a commercial property. The property owner, Premium Plastics, sued Great American Assurance Co., the insurance company that issued a mortgage-protection policy to the bank that held the mortgage lien on the Premium Plastics property, and Seattle Specialty Insurance Services, Inc., a third-party administrator that worked with the adjusting company on the hurricane-damage claim. Premium Plastics was the borrower on the underlying mortgage loan. Premium Plastics sued in state court, asserting causes of action for breach of the mortgage-insurance policy, breach of the duty of good faith and fair dealing, violations of the Texas Insurance Code ("TIC"), and violations of the Texas Deceptive Trade Practices Act ("DTPA"). The defendants timely removed.

Seattle Specialty and Great American have moved for summary judgment, arguing that Premium Plastics lacks standing to sue under the policy Great American issued to the mortgagee because Premium Plastics was neither the insured nor an intended third-party beneficiary of this force-placed, mortgage-protection insurance policy. (Docket Entry No. 11.) Premium Plastics

responds that because it paid the policy premiums, owns the insured property, and paid the mortgage, it is equitably subrogated to any claims the named insured — the mortgagee — might have against Seattle Specialty and Great American. (Docket Entry No. 14.) Premium Plastics has also moved to join East West Bank, the successor-in-interest to the mortgagee, as an involuntary plaintiff. (Docket Entry No. 15.)

This court heard oral argument on the motions. Based on the pleadings; the motions, responses, and replies; the arguments of counsel; the record; and the relevant law, this court grants the motion for summary judgment and denies the motion to join East West Bank. Final judgment is entered by separate order.

The reasons for these rulings are explained below.

## I. Background[1]

In 1993, Premium Plastics obtained a $350,000 mortgage loan from the Asian American National Bank. In return, Premium Plastics signed a note promising to repay the loan and a deed of trust granting Asian American a security interest in the property at issue, a commercial warehouse located at 14029 Alameda Road in Houston, Texas (the "Property"). (Docket Entry No 14-1, at 1; Docket Entry No. 14-4, at 1.) The deed of trust required Premium Plastics to insure the Property to protect the mortgagee's interest. United Commercial Bank ("UCB") is the successor-in-interest to Asian American National Bank.

[1] The background is drawn from the pleadings and the summary judgment record, which includes: (1) a copy of the mortgage-protection insurance policy Great American issued to the mortgagee; (2) written correspondence from Seattle Specialty to the mortgagee; (3) the independent insurance adjuster's damages report; (4) Seattle Specialty's internal claim-file notes; (5) a letter from Seattle Specialty to Reggie Barham; (6) the affidavit of David Wynn, Great American's custodian of records; (7) the affidavit of Robert Quigley, Seattle Specialty's vice-president; (8) Great American's November 2010 coverage-determination letter to the mortgagee; (9) the affidavit of Carol Barham, Premium Plastics's president; (10) a July 2008 letter from the mortgagor to Premium Plastics; (11) a release of lien executed by East West Bank for Premium Plastics's commercial property; and (12) a copy of a $16,274.38 check issued by Great American to East West Bank.

Great American issued UCB a force-placed or lender-placed mortgage-protection insurance policy (the "Policy"). The Policy provided continuous coverage from May 2003 until cancelled. The Policy insured UCB "against direct loss or damage to property" in which UCB had "a mortgagee interest, and acceptable hazard insurance [had] been cancelled or [had] not been received from the mortgagor." (Docket Entry No. 11-2, at 3.) "Mortgagee interest" was defined as "[UCB's] interest in the described location under a mortgage agreement, including the mortgagee interest of others [UCB] service[d] under a written servicing agreement." (*Id.*) The Policy declarations page listed "United Commercial Bank, Its successors and/or assigns" as the named insured and stated that the Policy did not provide coverage "for the interest or equity of the mortgagor." (*Id.* at 1.) The Policy defined "mortgagor" as "the purchaser of the described location for whom [UCB] ha[s] financed property" and stated that "[t]he mortgagor is not a Named Insured under this policy." (*Id.* at 3.) The Policy could not be assigned without Great American's "prior written consent." (*Id.* at 12.)

For a time, Premium Plastics purchased its own insurance for the Property, but only temporarily. Premium Plastics discontinued the insurance because of the premium cost. (Docket Entry No. 14-1, at 2.) UCB added the Property to what was covered under the mortgage-protection Policy issued by Great American and billed Premium Plastics for the premiums. (Docket Entry No. 14-3, at 1.) Premium Plastics was neither a named nor an additional insured on the Policy. The parties do not dispute that Premium Plastics reimbursed UCB for the insurance premiums UCB paid to Great American. The reimbursements were less than the cost of Premium Plastics purchasing its own insurance.

In January 2009, UCB submitted a claim under the Policy to Great American for damage to

the Property caused by Hurricane Ike. Acting on Great American's behalf, Seattle Specialty, the Policy's third-party administrator, sent UCB a letter acknowledging the claim. The letter stated that Seattle Specialty "started [its] claim process" and that "a field adjuster from Claims Adjustment Specialists [would] make an appointment" to inspect the Property. (Docket Entry No. 11-4, at 1.)

Michael Bower was assigned as the insurance adjuster on UCB's claim. In February 2009, Bower inspected the Property and noted damage to the roof, warehouse wall, reception area, hall, four offices, and vinyl flooring. (Docket Entry No. 11-5, at 2–4.) After subtracting the Policy deductible and depreciation, Bower calculated the actual cash value of the damages as $12,679.08, with $5,895.32 in recoverable depreciation. (*Id.* at 4.)

After Bower prepared his loss report, Kim Snowden, the UCB representative assigned to the claim, contacted Seattle Specialty. Snowden stated that Bower's report was inconsistent with the damage the Property sustained. According to Snowden, the report noted damage to the lower part of the interior walls but did not include damage to the ceiling and the upper walls from water coming in through broken skylights or the cost of replacing those skylights. (Docket Entry No. 11-6, at 3.) Snowden's inquiry prompted Seattle Specialty to reopen the claim in April 2009. (*Id.*)

After Seattle Specialty reopened the claim, Bower tried to arrange with Premium Plastics to reinspect the Property and to get receipts showing the replacement of the broken skylights. Seattle Specialty's claim-file notes indicate that at the advice of its attorney, Premium Plastics refused to allow Bower to reinspect the Property or to provide the receipts. (*Id.* at 4.) Seattle Specialty informed Snowden at UCB that Premium Plastics refused to cooperate with Bower. Snowden asked Seattle Specialty to contact Reggie Barham at Premium Plastics. A Seattle Specialty representative called Barham, who reiterated that his attorney had advised him not to provide additional

information to Bower. Barham also stated that he disagreed with Bower's estimate and that he had obtained a $40,000 contractor's bid for repairing the hurricane damage. Seattle Specialty asked for a copy of the bid, both by phone and by letter. (*Id.*) The letter, sent after several unsuccessful phone requests, stated that Seattle Specialty would "close [its] file" if Barham refused to provide the contractor's bid. (Docket Entry No. 11-7, at 1.) Barham did not respond to the letter or calls. In July 2009, Seattle Specialty closed UCB's claim. (Docket Entry No. 11-6, at 5.)

It appears that Premium Plastics had no contact with Seattle Specialty or Great American from July 2009 until May 2010, when Premium Plastics sued Seattle Specialty in state court. The original state-court petition did not name Great American as a defendant. In September 2010, Premium Plastics filed an amended petition doing so. The amended petition alleged that "Premium Plastics submitted a claim . . . for benefits" under the Policy; that Great American and Seattle Specialty "commissioned an independent adjuster to review the damage and return a damage estimate"; that the claim had "been adjusted and ready for payment for over a year"; and that Seattle Specialty and Great American had "failed and refused . . . to pay the claim." (Docket Entry No. 1-3, at 3.) The amended petition asserted causes of action for breach of contract, breach of the duty of good faith and fair dealing, and violations of the TIC and the DTPA.

Seattle Specialty and Great American timely removed to federal court. After removal, Great American paid UCB's claim under the Policy. Great American issued a $16,274.38 check to East West Bank, UCB's successor-in-interest. The check included $12,679.08 for the actual cash value of the damages Bower assessed and $3,595.30 in statutory interest at 18% per annum for the 19-month delay in paying the claim. (Docket Entry No. 11-10, at 1.) In a letter accompanying the check, Great American explained that Bower had submitted his damages estimate to Seattle

Specialty in February 2009, "but a payment was not issued for the damages as outlined in the estimate" because Seattle Specialty "requested information from . . . Premium Plastics . . . concerning receipts for replacement skylights that were never provided" and because Seattle Specialty requested "reinspection that was refused." (*Id.*) East West Bank endorsed the $16,274.38 check to Premium Plastics. By that time, Premium Plastics had repaid the mortgage loan. East West Bank no longer had a lien on, or an insurable mortgagee interest in, the Property. (Docket Entry No. 14-4, at 1–2.)

Seattle Specialty and Great American have moved for summary judgment. Seattle Specialty and Great American argue that Premium Plastics lacks standing to sue under the Policy because there is no contract between Premium Plastics and Seattle Specialty or Great American and because Premium Plastics is not a named insured, additional insured, or intended third-party beneficiary of the Policy. (Docket Entry No. 11, at 4–13.) Without a contract between Seattle Specialty or Great American and Premium Plastics, Seattle Specialty and Great American contend that the extracontractual claims fail as a matter of law. (*Id.* at 13–16.)

In response, Premium Plastics does not dispute that it is not a named insured, additional insured, or intended third-party beneficiary of the Policy. Instead, Premium Plastics argues that because it reimbursed UCB for the insurance premiums UCB paid to Great American and because it repaid the mortgage loan, it has standing to assert East West Bank's contractual and extracontractual claims under the equitable-subrogation doctrine. (Docket Entry No. 14, at 3–6.)

In the alternative, Premium Plastics moves to add East West Bank as an involuntary plaintiff under Federal Rule of Civil Procedure 19(a)(2). (Docket Entry No. 15.) Premium Plastics argues that

joining East West Bank as an involuntary plaintiff is proper because under Texas law, East West Bank has a duty to allow Premium Plastics to use its name in this litigation. (Docket Entry No. 18, at 1–3.) Seattle Specialty and Great American dispute that such a duty exists and argue that this case is not a "proper case" for joining an involuntary plaintiff. The defendants contend that because Great American paid UCB's claim under the Policy and because East West Bank was satisfied with the payment, there are no contractual or extracontractual rights that Premium Plastics can assume.

The parties' arguments are analyzed in detail below.

## II. Analysis

### A. Equitable Subrogation

The parties do not dispute that Premium Plastics did not contract with Great American or Seattle Specialty. Nor do the parties dispute that Premium Plastics is not a named insured, additional insured, or intended third-party beneficiary under the force-placed, mortgage-protection Policy that was issued to the mortgagee for the Premium Plastics Property. Premium Plastics invokes equitable subrogation as the basis for its right to assert East West Bank's contractual and extracontractual claims against Great American and Seattle Specialty. Premium Plastics argues that because it paid the insurance premiums on the Policy, it is entitled to assert the insured's rights to the insurance benefits when the insured does not do so. Premium Plastics also asserts that equitable subordination is supported by the fact that it has paid off the mortgage and the named insured no longer has an insurable interest under the Policy.

Texas law does not provide a basis for equitably subrogating Premium Plastics to any rights East West Bank has against its insurer, Great American, or the third-party claims administrator, Seattle Specialty. Equitable subrogation "'is a legal fiction' whereby 'an obligation, extinguished

by a payment made by a third person, is treated as still subsisting for the benefit of this third person, so that by means of it one creditor is substituted to the rights, remedies, and securities of another.'" *Bank of Am. v. Babu*, 340 S.W.3d 917, 925 (Tex. App.—Dallas 2011, no pet.) (quoting *First Nat'l Bank of Houston v. Ackerman*, 8 S.W. 45, 47 (Tex. 1888)). Equitable subrogation "allows a party who would otherwise lack standing to step into the shoes of and pursue the claims belonging to a party with standing." *Frymire Eng'g Co., Inc. ex rel. Liberty Mut. Ins. Co. v. Jomar Int'l, Ltd.*, 259 S.W.3d 140, 142 (Tex. 2008). Texas courts interpret the doctrine liberally. *Id.* Although the doctrine most often arises in the insurance context, it "applies 'in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter.'" *Id.* (quoting *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 774 (Tex. 2007)). "Thus, a party seeking equitable subrogation must show it involuntarily paid a debt primarily owed by another in a situation that favors equitable relief." *Id.* "[A] party is not entitled to equitable subrogation if it pays a debt for which it was primarily liable." *Bennett Truck Transport, LLC v. Williams Bros. Constr.*, 256 S.W.3d 730, 734 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

The purpose of equitable subrogation is "to afford relief to those required to pay a legal obligation that ought, in equity and good conscience, to have been met by another." *Southmark Corp. v. Schulte, Roth & Zabel, L.L.P.*, 242 B.R. 330, 342 (N.D. Tex. 1999). Equitable subrogation allows a third party who pays another's debt to step into the shoes of the debtor's creditor and recoup its payment as if the creditor's rights and remedies against the debtor were the third party's own. *See Brown v. Zimmerman*, 160 S.W.3d 695, 700 (Tex. App.—Dallas 2005, no pet.). For example, an insurer (the third party) who pays a covered loss suffered by an insured (the creditor)

may seek to recover its payment from the person responsible for causing the loss (the debtor) by asserting any claims the insured may have against that person. *Int'l Ins. Co. v. Med.-Prof'l Bldg. of Corpus Christi*, 405 S.W.2d 867, 869 (Tex. Civ. App.—Corpus Christi 1966, writ ref'd n.r.e.). Similarly, a third party who pays an estate's debt to a creditor may be subrogated to the creditor's claims against the estate. *Sherman v. El Paso Nat'l Bank*, 100 S.W.2d 402, 408–09 (Tex. Civ. App.—El Paso 1936, writ dism'd). These and other examples illustrate that equitable subrogation may permit a party to recover what it has paid by stepping into the shoes of the person to whom payment was made.

In this case, Premium Plastics argues that it may assert East West Bank's claims against Seattle Specialty and Great American because it paid the insurance premiums under the Policy. But the insurance premiums were the insured's debt to Great American. Premium Plastics does not seek to recover the insurance premiums from East West Bank, UCB's successor-in-interest, by asserting Great American's rights and remedies against East West Bank. Instead, Premium Plastics seeks to recover insurance benefits from Great American, the creditor to whom UCB owed the premiums. Premium Plastics does not cite Texas cases applying equitable subrogation in these or similar circumstances. The equitable-subrogation doctrine substitutes a creditor to the rights and remedies of another creditor; it does not substitute a creditor to the rights and remedies of a debtor. Texas law does not provide a basis for equitably subrogating a third party to the claims of a debtor whose debt the third party has paid. To the extent Premium Plastics's equitable subrogation argument is based on repaying its mortgage loan, Premium Plastics is not entitled to equitable subrogation because it was primarily responsible for the loan. *See Bennett Truck Transport*, 256 S.W.3d at 734 (stating that "a party is not entitled to equitable subrogation if it pays a debt for which it was primarily liable").

Premium Plastics paid the mortgage premiums because it was required to do so under the deed of trust on the Property. Neither those payments, nor the fact that it subsequently paid off the mortgage, gives it the right to assert the mortgagee's interest under the mortgage-protection Policy. Premium Plastics has no contractual rights and equitable subrogation does not provide an alternative ground for recovery. *See Barrios v. Great Am. Assur. Co.*, No. H–10–3511, 2011 WL 3608510, at *3 (S.D. Tex. Aug. 16, 2011) (holding that the plaintiff-mortgagors lacked standing to sue an insurer under a lender-placed, mortgage-protection policy where the plaintiffs were "not named insureds, additional insureds or intended third-party beneficiaries of the policy" and "appeal[ed] only to equity"); *Trevino v. Evanston Ins. Co.*, No. M–11–18, 2011 WL 2709063, at *2–3 (S.D. Tex. July 12, 2011) (holding that a mortgagor was not an intended-third party beneficiary under a mortgagee's force-placed insurance policy and could not sue the insurer for benefits under the policy).

**B. The Rule 19 Motion**

Premium Plastics tries to cure its standing problem by moving to join East West Bank as an involuntary plaintiff under Rule 19 of the Federal Rules of Civil Procedure. "Rule 19 provides a mechanism for joining, where feasible, parties necessary for the just adjudication of a dispute and, where it is not feasible to join such parties, for dismissing the case." *Salt Lake Tribune Publ'g v. AT & T Corp.*, 320 F.3d 1081, 1097 n.8 (10th Cir. 2003). Under Rule 19(a)(1), a party may be necessary in three different ways:

> First, a person is necessary if, in his absence, the court cannot accord complete relief among existing parties. Second, a person is necessary if he has an interest in the action and resolving the action in his absence may as a practical matter impair or impede his ability to protect that interest. Third, a person is necessary if he has an interest in the action and resolving the action in his absence may leave an existing party subject to inconsistent obligations because of that interest.

*Salt River Project Agric. Improvement & Power Dist. v. Lee*, --- F.3d ----, 2012 WL 858877, at *2 (9th Cir. Mar. 15, 2012) (internal citations omitted). If a necessary person has not been joined and joinder is feasible, "the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff."[2] FED. R. CIV. P. 19(a)(2). The "proper case" for joining a necessary party as an involuntary plaintiff " is meant to cover only those instances where the absent party has either a duty to allow the plaintiff to use his name in the action or some sort of an obligation to join plaintiff in the action." *Eikel v. States Marine Lines, Inc.*, 473 F.2d 959, 962 (5th Cir. 1973).

As the party moving to join East West Bank under Rule 19, Premium Plastics bears the burden of showing that East West Bank is a necessary party and that this is a "proper case" for joining an involuntary plaintiff. *See Speaks Family Legacy Chapels, Inc. v. Nat'l Heritage Enters., Inc.*, No. 2:08-cv-04148-NKL, 2009 WL 2391769, at *7 (W.D. Mo. Aug. 3, 2009) ("The party asserting a Rule 19 motion to join or dismiss bears the burden of proving that joinder or dismissal is required." (citations omitted)). Premium Plastics does not cite cases discussing the three situations under which a party may be "necessary" under Rule 19(a)(1). Instead, Premium Plastics argues that East West Bank has a duty under Texas law to enforce the Policy in Premium Plastics's name. In the alternative, Premium Plastics argues that East West Bank "has an equitable duty to allow Premium Plastics to use its name in this action because East West Bank required Premium Plastics to pay the mortgagee policy premiums in addition to the mortgage payments." (Docket Entry No. 18, at 3.)

[2] If a party should be joined under Rule 19(a) but joinder is not feasible, the court must determine whether the absent party is "indispensable" under Rule 19(b). If the party is indispensable, the action must be dismissed. In this case, Premium Plastics moves to join East West Bank as an involuntary plaintiff under Rule 19(a), not to dismiss the case on the ground that East West Bank is an indispensable party who cannot be joined. Only the Rule 19(a) analysis is relevant to the resolution of this case.

Premium Plastics does not explain how, *if* East West Bank had a duty to sue Great American and Seattle Specialty under the mortgage-protection Policy for a larger payment of proceeds for hurricane damage to the mortgaged Property, that would make East West Bank a "necessary" party to this litigation. In any event, Texas law does not impose such a duty on East West Bank. The loss from the hurricane damage occurred before Premium Plastics paid off the mortgage. East West Bank received the insurance proceeds as the named insured under the mortgage-protection Policy. The fact that East West Bank did not sue to claim that the payment was inadequate does not create a right on the part of Premium Plastics to do so, and the fact that Premium Plastics has since paid off the mortgage does not give it greater or different rights under the mortgage-protection Policy than it had when it still owed mortgage debt.

Premium Plastics cites *Universal Automobile Insurance Co. v. Morris Finance Corp.*, 16 S.W.2d 360 (Tex. Civ. App.—Eastland 1929, writ dism'd). In *Universal Automobile*, a finance company purchased insurance for a car that had been pledged as collateral for eight promissory notes. After the car was destroyed in a fire, the promisor defaulted on the notes. The finance company sued to recover the unpaid principal and interest without filing a claim to collect insurance proceeds. The promisor impleaded the insurance company. "The trial resulted in judgment in favor of the finance [company] against the [promisor] for the principal, interest, and attorneys' fees, and judgment for [the promisor] against the insurance company for $800." 16 S.W.2d at 361. On appeal, the insurance company challenged the judgment for the promisor. Rejecting the argument that the promisor, who was named on the certificate of insurance, did not have a right to sue under the policy, the court stated that "[i]t was the plain duty of the [finance] company to take such steps as were necessary for the collection of th[e] policy." *Id.* at 361–62. The court held that because the finance company "abandoned its right to sue on the policy, clearly that right thereby vested in [the

promisor]." *Id.* at 362. The court explained that "[i]t would be manifestly wrong to permit the insurance company to escape liability on a policy issued by it on the ground merely that the [finance company], one member of which was the insurance company's agent, chose to release the [insurance] company . . . and take judgment against the [promisor] on the notes." *Id.*

Unlike the insured in *Universal Automobile*, UCB clearly took steps to collect under the Policy for the damage the Property sustained. In January 2009, UCB filed a claim with Great American. After Great American adjusted the claim, UCB contacted Seattle Specialty and questioned Bower's damages estimate. UCB's inquiry led to Seattle Specialty's reopening the claim. The undisputed record evidence reveals that at that point, Premium Plastics refused to allow Bower to reinspect the premises or to submit receipts for the cost of replacing the broken skylights and a contractor's bid for repairing the damage to the Property. Great American later paid what it and Seattle Specialty found to be covered losses. Texas law does not impose a duty on East West Bank to sue Great American and Seattle Specialty for greater payment under the Policy or for extracontractual damages. Nor does Texas law impose a duty on East West Bank to allow Premium Plastics to use its name in this litigation. Premium Plastics may not use Rule 19 to force East West Bank into this litigation, particularly given the undisputed fact that when UCB tried to collect insurance proceeds under the Policy, Premium Plastics refused to cooperate.[3]

*Universal Automobile* does not support Premium Plastics's arguments. Premium Plastics has not met its burden of showing that East West Bank is a "necessary" party under Rule 19. The

[3] Even if Premium Plastics had cooperated with Seattle Specialty after Seattle Specialty reopened the insurance claim, it is not clear that Texas law would impose a duty on East West Bank to sue Great American and Seattle Specialty for greater payment under the Policy or for extracontractual damages. This is not a case in which East West Bank sued Premium Plastics for defaulting on the mortgage loan after the Property was damaged without trying to collect insurance proceeds. In addition, the Policy insured the mortgagee's interest in the Property, not the mortgagor's interest. Texas courts have held that "[a] mortgagee has an insurable interest in the mortgage property entirely separate and distinct from that of the mortgagor." *Gilbreath v. White*, 903 S.W.2d 851, 845 (Tex. App.—Texarkana 1995, no writ).

motion to amend to join East West Bank as an involuntary plaintiff is denied.

**C. The Summary Judgment Motion**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied

by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

To prevail on a breach of contract claim, a plaintiff must show "the existence of a valid contract, the plaintiff's performance or tendered performance, the defendant's breach of the contract, and damages as a result of the breach." *Trahan v. Fire Ins. Exch.*, 179 S.W.3d 669, 674 (Tex. App.—Beaumont 2005, no pet.). The undisputed record evidence shows that as a matter of law, Premium Plastics has no breach of contract claim against Great American or Seattle Specialty. Premium Plastics did not enter into an insurance contract with Great American or Seattle Specialty and is not a named insured, additional insured, or intended third-party beneficiary of the Policy. Nor, as discussed above, is Premium Plastics equitably subrogated to East West Bank's contractual rights against Seattle Specialty and Great American. Seattle Specialty and Great American are entitled to summary judgment on the breach of contract claim. *See Barrios*, 2011 WL 3608510, at *3–4.

Seattle Specialty and Great American are also entitled to summary judgment on Premium Plastics's extracontractual claims. Because Premium Plastics is, at most, a third-party claimant and not an insured under the Policy, it cannot recover for breach of the duty of good faith and fair

dealing or for the defendants' alleged violations of the Texas Insurance Code. *See Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 279–80 (Tex. 1995); *Allstate Ins. Co. v. Watson*, 876 S.W.2d 145, 149 (Tex. 1994). And because Premium Plastics is not a "consumer" with respect to Seattle Specialty or Great American under the DTPA, it cannot prevail on its DTPA claims. *See Barrios*, 2011 WL 3608510, at *4.

## IV. Conclusion

Seattle Specialty's and Great American's motion for summary judgment is granted. Premium Plastics's motion to join East West Bank as an involuntary plaintiff is denied.

Final judgment is entered by separate order.

SIGNED on March 26, 2012, at Houston, Texas.

Lee H. Rosenthal
United States District Judge